IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:17-cr-215 |
| v. ) | |
| ) | |
| RAYMOND JUIWEN HO, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Defendant Raymond Juiwen Ho, by and through counsel, hereby submits this memorandum in support Defendant's Emergency Motion for Compassionate Release.  Mr. Ho moves the Court to order his immediate compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and resentence him to time served, home confinement, or such other sentence deemed just by the Court due to the "extraordinary and compelling reasons" confronting the federal prison system by the Covid-19 pandemic.  This public health emergency has caused a growing number of infections and deaths in the federal prison system, particularly among inmates with underlying health conditions.  Mr. Ho is at significant risk of contracting and developing severe complications from an exposure to Covid-19 due to his underlying health conditions in the form of type 2 diabetes, hypertension, and his age (over 50 years old).  This pandemic, which continues its devastating march through the federal prison system, has created extraordinary and compelling reasons for his release.

**PROCEDURAL HISTORY**

On October 19, 2017, Mr. Ho waived indictment and pled guilty to a criminal information charging him with one count of conspiracy to commit money laundering in violation

of 18 U.S.C. § 1956(h) and one count of substantive money laundering in violation of 18 U.S.C. § 1956(a)(3).  (Dkt. No. 7).  On February 2, 2018, the Court sentenced him to 84 months imprisonment, followed by three years of supervised release, and ordered him to pay $2,046,518.48 in restitution.  (Dkt. No. 25).  Mr. Ho began his prison sentence on April 4, 2018.  *See* Ex. 1 (Sentence Monitoring Computation Data).  ███████████████████████████████████████████████  His projected release date, which takes into account his good-time credit, is July 2, 2022.  *Id.*

Mr. Ho suffers from several significant health conditions: type 2 diabetes, hypertension, and, high cholesterol. To address these conditions, he regularly takes prescribed medications Metformin, Lisinopril, and Astorvastatin, as reflected in his presentence report ("PSR") (Dkt. No. 17).

Mr. Ho is currently incarcerated at Federal Correctional Institution Petersburg Low ("FCI Petersburg") in Hopewell, Virginia.  He resides in the facility's minimum security camp.  On April 15, 2020, Mr. Ho submitted a request to the prison's warden for early release to home confinement pursuant to the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), and Attorney General William Barr's memoranda to the BOP.  *See* Ex. 2 (April 15, 2020 letter to Warden Andrews).  To date, Mr. Ho has received no relief.

## ARGUMENT

**I.   COVID-19's IMPACT ON THE BUREAU OF PRISONS**

Over the past several months, Covid-19 has spread across the globe and throughout the United States.  On March 11, 2020, the World Health Organization officially classified the

disease as a pandemic.[1] Two days later, President Donald J. Trump declared the Covid-19 outbreak a national emergency under the National Emergencies Act, 50 U.S.C. §§ 1601 *et seq.*[2] As of June 1, 2020, the disease has infected over 6.1 million people worldwide and has led to approximately 372,000 deaths.[3] In the United States, 1,798,765 people have been infected, of whom 104,381 have died.[4] Federal prisons have not been spared. Throughout the Bureau of Prisons ("BOP"), 5,234 inmates and 612 staff members have contracted Covid-19.[5] Sixty-seven inmates have died from the disease.[6] The disease has touched FCI Petersburg, where a staff member contracted the disease (and has since recovered).[7]

In recognition of the unique risks prisons pose to both inmates and staff, on March 19, 2020, members of Congress asked the BOP to permit the immediate release of elderly, non-violent inmates.[8] On March 26, 2020, Attorney General Barr encouraged the BOP director to prioritize home confinement for such individuals.[9] On April 3, 2020, the Attorney General issued another memorandum to the BOP, this time directing the agency to transfer vulnerable

---

[1] Press Release, World Health Organization, WHO Director-General's opening remarks at the media briefing on Covid-19 – 11 March 2020 (Mar. 11, 2020), *available at* https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (last visited May 25, 2020).
[2] The White House, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (last visited May 25, 2020).
[3] *Coronavirus Map: Tracking the Global Outbreak*, N.Y. TIMES (updated daily), https://www.nytimes.com/interactive/2020/world/coronavirus-maps.html?auth=login-email&login=email (last visited June 1, 2020).
[4] *Id.*
[5] Bureau of Prisons website, https://www.bop.gov/coronavirus/ (last visited June 1, 2020).
[6] *Id.*
[7] *Id.*
[8] Letter from Rep. Jerrold Nadler & Rep. Karen Bass to U.S. Attorney General William P. Barr (Mar. 19, 2020), *available at* https://judiciary.house.gov/uploadedfiles/2020-03-19_letter_to_ag_barr_re_covid19.pdf?utm_campaign=2631-519.
[9] Memorandum from Attorney General William P. Barr to Director of Bureau of Prisons (Mar. 26, 2020, *available at* www.justice.gov/file/1262731/download.

prisoners to home confinement with due "dispatch."[10] Since the release of the original memo, the BOP has placed 3,311 inmates on home confinement.[11]

According to the BOP website, FCI Petersburg houses 1,026 inmates, including 217 at the camp.[12] The size of the facility along with camp's dormitory-style configuration, where pairs of inmates live in pods with partial walls and no doors, makes social distancing, a critical safety measure in arresting infection transmission, impossible. Mr. Ho is particularly vulnerable.

## II. COMPASSIONATE RELEASE

### A. Extraordinary and Compelling Reasons Exist for Release

Passed in December 2018, the First Step Act amended 18 U.S.C. § 3582, the law that governs compassionate release. The law enables inmates—rather than only the BOP director—to file a motion for compassionate release after exhausting all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is sooner." 18 U.S.C. § 3582(c)(1)(A).

As noted above, Mr. Ho submitted his request to the warden at FCI Petersburg on April 15, 2020 and, as of the date of this filing, has not received any relief.

The statute requires the Court to examine whether granting a compassionate release request "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The U.S. Sentencing Guidelines ("U.S.S.G.") allow for compassionate release under circumstances that constitute "extraordinary and compelling reasons." U.S.S.G. § 1.B1.13.

The commentary to Section 1.B1.13 lists several specific circumstances deemed to constitute extraordinary and compelling reasons. One such circumstance is present where "[t]he

---

[10] Memorandum from Attorney General William P. Barr to Director of Bureau of Prisons (Apr. 3, 2020, *available at* https://www.justice.gov/file/1266661/download.
[11] Bureau of Prisons website, https://www.bop.gov/coronavirus/ (last visited June 1, 2020).
[12] Bureau of Prisons website, https://www.bop.gov/locations/institutions/pet/ (last visited June 1, 2020).

defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. n.1(A)(ii)(I). Mr. Ho meets this requirement. Mr. Ho meets that requirement. He suffers from a range of health conditions, including type 2 diabetes, from which he is not expected to recover. Since Covid-19 has torn through the BOP, including FCI Petersburg, Mr. Ho "cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus." *United States v. Perez*, No. 17-cr-513-3, 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020).

The notes to Section 1.B1.13 also include a broader provision allowing for release based on "[o]ther [r]easons . . . as determined by the Director of the Bureau of Prisons." *Id.* cmt. n.1(D). Courts have construed the requirements in the commentary expansively in determining what constitutes a finding of extraordinary and compelling reasons to order compassionate release. *See, e.g., United States v. Perdigao*, No. 07-cr-103-EEF, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (courts "have discretion to determine what constitutes an 'extraordinary and compelling reason[ ]' on a case by case basis," and finding that "reliance on the [Sentencing Commission's] policy statement may be helpful, but not dispositive"); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in [the Sentencing Commission's policy statement] warrant granting relief."); *United States v. Beck*, No. 13-cr-186-6-CCE, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling' reasons warrant a sentence reduction under § 3582(c)(1)(A)(i).").

5

Section 1.B1.13 also provides that a court may grant a compassionate release request only if it "determines . . .[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B.13(2). Mr. Ho does not present a danger to the safety of any individual or to the community. After the Court accepted his guilty plea, Mr. Ho, who, with no prior convictions, was assigned the lowest possible criminal history score, was allowed to remain on bond during the proceedings in this Court and to self-surrender to the BOP facility where he now resides. According to the U.S. probation officer who supervised him, while on bond, Mr. Ho "remained compliant with all conditions of release[,]" including "abid[ing] by the rules of location monitoring." PSR at ¶ 5.

The Covid-19 pandemic is an unprecedented health crisis that has struck the BOP hard, putting the lives of inmates, particularly those with underlying health conditions, at risk. Mr. Ho's medical situation and the effect the virus has had within the BOP constitute "extraordinary and compelling reasons" in support of Mr. Ho's immediate release pursuant to a new sentence of time served or home confinement for the remainder of his sentence.

**B.   Section 3553(a) Factors Support Release**

Section 3582(c)(1)(A) also directs courts to "consider[ ] the factors set forth in [18 U.S.C. § 3553(a)], to the extent they are applicable." The applicable sentencing factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  In the context of the current pandemic,

courts have also found it "prudent to consider the factors that the Attorney General finds to be important when a judge is assessing a compassionate release motion." *United States v. Resnick*, No. 14-cr-810, 2020 WL 1651508 *5 (S.D.N.Y April 2, 2020). The Attorney General has advised the Director of the BOP to consider, among other factors, "[t]he age and vulnerability of the inmate to COVID-19, in accordance with the [CDC] guidelines;" "[t]he security level of the facility currently holding the inmate, with priority given to inmate residing in low and minimum security facilities;" "[t]he inmate's conduct in prison;" and "[w]hether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility."[13] These factors support granting Mr. Ho's release pursuant to a sentence of time served or home confinement.

The Centers for Disease Control and Prevention ("CDC") have issued guidance related to the deadly effects of Covid-19 on certain high-risk members of the population. According to the CDC, the population most at risk of a severe condition or death includes adults with underlying medical conditions such as diabetes and other types of chronic illness. For these individuals, the CDC has advised taking immediate preventative actions, including avoiding crowded areas and staying at home as much as possible.[14] Sites of disproportionate infectious disease rates[15], jails and prisons are among the riskiest places for individuals with compromised health. As noted

---

[13] Memorandum from Attorney General William P. Barr to Director of Bureau of Prisons (Mar. 26, 2020, *available at* www.justice.gov/file/1262731/download.
[14] "Coronavirus Disease 2019: People Who Are at Higher Risk," Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 25, 2020).
[15] Leonard S. Rubenstein, et al., HIV, Prisoners and Human Rights, Lancet (July 14, 2016), www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)30663-8/fulltext (last visited May 25, 2020).

above, Mr. suffers from type 2 diabetes and hypertension, underlying health conditions that make him more susceptible to a severe case of Covid-19, including death.

Mr. Ho resides in the camp facility at FCI Petersburg Low. During his time in prison, his conduct has been exemplary. As illustrated by his July 2, 2022 release date, he is on track to earn the BOP's good-time credit with respect to his 60-month sentence. He has used his time in prison productively, studying for an MBA through Adams State University and having successfully completed courses in Spanish, Latin, public speaking, money management, and real estate. *See* Ex. 3 (Inmate Education Data Transcript). Mr. Ho has also obtained a commercial driver's license while incarcerated.

Nearly 51 years old and possessing engineering and law degrees and extensive job skills, Mr. Ho presents a low likelihood of recidivism and a high likelihood of gainful employment. Upon his release from prison, he would live in the home of a close family friend, Lincoln Cheng, in Vienna, Virginia where the risk of community transmission of the coronavirus is low. If exposed to the virus upon his release, he would have access to high quality medical facilities in Northern Virginia and the medical professionals who have treated him for his underlying health conditions.

### C. Courts Have Released Similarly-Situated Inmates During This Pandemic

This Court and judges around the country have released defendants in light of the extraordinary risk posed by the Covid-19 pandemic. *See, e.g., United States v. Chatelain*, No. 1:19-cr-133-LMB, Dkt. No. 73 (E.D.Va. May 1, 2020) (resentencing 70 year-old defendant with chronic health conditions, including type 2 diabetes, serving a 60-month sentence that began in late 2019 to time served) (attached hereto as Ex. 4); *United States v. Kelly*, No. 3:13-cr-59, 2020 WL 2104241, at *5, (S.D.Miss. May 1, 2020) (resentencing defendant to time served, the court

noted "incarcerated populations are uniquely susceptible to COVID-19 because the most important strategy of physical distancing simply is not possible in prisons, jails, and detention centers") (quotation marks and citation omitted); *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *2 (S.D.N.Y. Apr. 20, 2020) (ordering compassionate release of inmate who "is 55-years old and suffers from high blood pressure, high cholesterol, sleep apnea, and hypertension, and . . . [who] therefore contends that he is susceptible to serious injury or death if he contracts the disease."); *United States v. Grobman*, No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted of fraud scheme in light of "extraordinary situation of medical-comprised detained being housed at a detention center where it is difficult if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate") (attached hereto as Ex. 5); *United States v. Powell*, No. 1:94-cr-316-ESH, ECF No. 98 (D.D.C. Mar. 28, 2020) (granting motion for compassionate release in light of Covid-19) (attached hereto as Ex. 6); *United States v. Harris*, No. 19-cr-356, 2020 WL 1503444, at *6-7 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to the community safety than the risk posed by Defendant's release to home confinement on ... strict conditions."); *United States v. Stephens*, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinary dangerous nature of the COVID-19 pandemic."); *United States v. Sawicz*, 08-cr-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (defendant's underlying medical condition of hypertension sufficient to warrant his release in light of the Covid-19 pandemic); *United States v. Colvin*, 2020 WL 1613943, *3 (D. Conn. Apr. 2, 2020) (releasing sentenced inmate with underlying health conditions in light of fast spreading Covid-19).

## **CONCLUSION**

For the reasons set forth above, Mr. Ho respectfully requests that the Court grant his motion for compassionate release and resentence him to time served, home confinement, or such other sentence deemed just by the Court.

Respectfully submitted,

By: \_\_\_\_\_/s/_____
Timothy D. Belevetz (VSB #36110)
Ice Miller, LLP
20 F Street, N.W., Suite 850
Washington, DC  20001
Tel: (202) 572-1605
timothy.belevetz@icemiller.com

*Counsel for Defendant Raymond Juiwen Ho*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of June 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

Alexander P. Berrang
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3769
alexander.p.berrang@usdoj.gov

*Counsel for the United States*

                                                         /s/
                                        Timothy D. Belevetz
                                        Ice Miller LLP
                                        20 F Street, Suite 850
                                        Washington, DC 20001
                                        Tel: (202) 572-1605
                                        timothy.belevetz@icemiller.com